1 | BElm.RMD

2 | LEONARDO M. RAPADAS
United States Attorney
3 | KARON V. JOHNSON
Assistant U.S. Attorney
4 | Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
5 | Agana, Guam 96910
Telephone: (671) 472-7332/7283
6 | Telecopier: (671) 472-7334

7 | Attorneys for United States of America

**FILED**
DISTRICT COURT OF GUAM

JUL 12 2007 *mba*

MARY L.M. MORAN
CLERK OF COURT

8

9 | **IN THE UNITED STATES DISTRICT COURT**

10 | **FOR THE TERRITORY OF GUAM**

11 | UNITED STATES OF AMERICA,       )    CRIMINAL CASE NO. __07-00026__
                                )
12 |               Plaintiff,       )
                                )    **GOVERNMENT'S RESPONSE**
13 |        vs.                     )    **TO DEFENDANT'S MOTIONS**
                                )    **TO DISMISS INDICTMENT OR**
14 | BRIAN WILLIAM ELM,             )    **MOTION IN LIMINE**
                                )
15 |               Defendants.      )
    ────────────────────────────

16

17 |     Defendant's motions are based upon the odd belief that this charge was brought pursuant

18 | to 18 U.S.C. § 1623(c). To the contrary, it charges a violation of § 1623(a). It is true that the

19 | caption only cites "§ 1623." The nature of the charge, however, is clear from the body of the

20 | indictment. Federal Rule of Criminal Procedure 7(c) requires the government to set forth a

21 | "plain, concise, and definite written statement of the essential facts constituting the offense

22 | charged ..." The body of the indictment charges a violation of 1623(a), that defendant made

23 | false statements under oath at his trial. The caption of the indictment, citing simply § 1623, is

24 | not contrary to the language of the charge. Indeed, even had the caption of the indictment read

25 | "1623(c)," it would be irrelevant. Errors in the indictment captions, or other citation errors are

26 | not grounds to dismiss an indictment. FRCrP 7(c)(3). "[I]t is well established that the caption is

27

28 |                                         -1-

ORIGINAL

1  completely surplusage and does not control the body of the indictment." United States v.

2  Pazsint, 703 F.2d 420, 423 (9th Cir. 1983).

3      Defendant's basis for this motion to dismiss is that the government stated during the

4  court's hearing Monday, June 25, 2007, that this case was brought pursuant to § 1623(c); he

5  asserts at page 8 of his Motion to Dismiss that the "government stated that it need not prove the

6  heavy burden that Mr. Elm's statements were false at trial, but that they are merely inconsistent

7  with his statements at sentencing." The transcript of that hearing is attached hereto as Exhibit 1.

8  The government never said anything remotely resembling this. Counsel first raised this issue at

9  page 13, when he asserted that the government had to prove that defendant's statement at

10  sentencing was false. The government explained at page 40 that it was not contending that

11  defendant had made two contradictory statements under oath. The charge against defendant "is

12  just a plain old ordinary homegrown perjury on the witness stand. The fact that he told the judge

13  that in fact he had been dealing is simply evidence that he lied at trial." Counsel said at page 50

14  that the government could not "go on the theory, well, one statement he said this, one statement

15  he said that, I automatically win. She cannot rely on that theory." The government agrees. It

16  has no intention of relying on this theory.

17      Section 1623(c) concerns two contradictory sworn statements; both must be clearly pled

18  in the indictment. If this offense concerned two contradictory sworn statements, it would have

19  been charged that way. But it does not, and was not. One of the pieces of evidence against

20  defendant will be his own admission before the sentencing judge that in fact he had been

21  involved in the drug trafficking for which he was sentenced, after swearing at trial that he had

22  not. This sort of evidence is no different than, for example, a person admitting to a friend that he

23  had committed a bank robbery, after swearing at trial that he had not. The friend's testimony

24  would be relevant in a subsequent perjury trial. The bulk of the government's proof will be

25  through the transcripts of the testimony of defendant's confederates. If the jury convicts

26  defendant of perjury, they will have likely found that his statement at sentencing was false. Or,

27

28      -2-

1   they may chose to rely on the testimony of his co-defendants, and give no weight to his
2   sentencing statement at all. In any case, the falsity of his sentencing statement is not an element
3   in this charge, but merely proof.

4       The government would note, parenthetically, that § 1623(c) does not charge a separate
5   crime from that of 1623(a). It simply addresses the government's burden of proof in situations
6   were the defendant has made two false contradictory statements under oath, which are so
7   inconsistent that necessarily one of them must be false. It relieves the government of having to
8   prove which one was false and which one was true, by providing that the government carries its
9   burden of proof when it shows that "the defendant while under oath made irreconcilably
10  contradictory declarations material to the point in question ...."

11  ## DISMISSAL OF INDICTMENT BASED UPON BRONTZEN

12      Although defendant's motion is captioned as if he seeks to dismiss the indictment
13  pursuant to Bronzton v. United States, 409 U.S. 352 (1973), he captions that section of the
14  memorandum as a request for a Brontzton instruction. Assuming he is moving to dismiss the
15  indictment, the Brontzton decision is not on point. It concerned a narrow issue, "whether a
16  witness may be convicted of perjury for an answer, under oath, that is literally true but not
17  responsive to the question asked and arguably misleading by negative implication." Id. at 352-
18  53. The questions posed to defendant were hardly ambiguous, and his answers were certainly
19  responsive:

20      Q: Have you ever received packages in the mail from Jonathan Canovas that
        contained controlled substances in them?
21
        A: No.
22

23      Q: Now, you are charged in this case; why haven't you pled guilty?

24      A: Because I'm not involved.

25      Q: What do you mean you're not involved?

26      A: I just–I didn't have anything to do with this.

27

28                                    -3-

Q: Now Mr. Aponik has said that shortly before you went to jail that you introduced him to Mr. Cruz and put them together so they could continue this drug operation; is that true?

A: That's not true.

For the court to grant defendant's motion, it would have to find as a matter of law that "No," "That's not true," and "I didn't have anything to do with this," were literally true but not responsive to the question asked. Defendant does not assert these responses were literally true, for that would constitute an admission to this charge. Rather, he asserts that they are capable of other explanations. That is the point of a jury trial.

The government notes that, once again, defendant says the jury's 5-50 gram quantity finding constituted a "not guilty" as to one "element" of the charge. The drug type and quantity are not elements of a drug distribution offense. United States v. Thomas, 355 F.3d 1191 (9th Cir. 2004). The sentencing provisions of Title 21, U.S.C. § 841(a)(1), based upon drug type and quantity, do not create separate crimes. United States v. Valensia, 299 F.3d 1068 (9th Cir. 2002). This court should instruct defendant that he may not tell the trial jury that he was convicted of a lesser included crime. He was convicted of the charge in Count I, conspiracy to distribute ice. It appears that he intends this misconception to be part of his defense, that he wants to argue that when he said he was "not involved" in Count I, he meant that he was not involved in distribution of more than 50 grams, but he was guilty of a lesser amount. But the case was tried on the legal premise prescribed by Thomas, that quantity was not an element, and that the amount of drugs was a question which would only be reached if the jury found that defendant had conspired to traffic in any amount. As will be apparent by Mr. Van De Veld's closing argument, which the court reporter is presently transcribing, the parties understood the legal parameters of the case, and confined themselves strictly to the elements of Count I.

## SUPPRESSION OF TRIAL TRANSCRIPT

Although defendant captions the motion as one to "redact the entire sentencing transcript," at page 7 of his brief he addresses whether the trial transcript of defendant's

-4-

testimony should be redacted. Thus, it appears that defendant wants this court to rule, prior to the government's case, that as a matter of law certain questions and answers in his trial testimony were ambiguous and therefore should be suppressed. He cites no authority for such a proposition, however. Summary judgment is not applicable to criminal proceedings. Federal Rule of Evidence 402 allows the introduction of relevant evidence. FRE 401 defines relevant evidence as that which has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The government must prove that defendant's false statements were material to the matter at issue, whether he was guilty of conspiring to distribute ice. Necessarily, materiality is a matter of context; hence the government must introduce sufficient evidence from the prior trial to establish the relevance of defendant's statements. United States v. Leon-Reyes, 177 F.3d 816 (9th Cir. 1999). Such a determination cannot be made by this court prior to hearing the evidence. If the government's case is inadequate, defendant has the option of a Rule 29 motion. Criminal law does not provide any other recourse.

Respectfully submitted this  12th  day of July, 2007.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: _____
KARON V. JOHNSON
Assistant U.S. Attorney

-5-

IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

* * *

**FILED**

DISTRICT COURT OF GUAM

JUL 11 2007

MARY L.M. MORAN

CLERK OF COURT

UNITED STATES OF AMERICA,  )  **COURT OF APPEALS**
                           )       **CASE NO.**
                Plaintiff, )
                           )
       vs.                 ) CRIMINAL CASE
                           )     NO. CR07-00026
BRIAN WILLIAM ELM,         )
                           )
                Defendant. )
_____)

TRANSCRIPT OF PROCEEDINGS

BEFORE

THE HONORABLE FRANCES M. TYDINGCO-GATEWOOD

Chief Judge

**MOTION IN LIMINE HEARING**

**MONDAY, JUNE 25, 2007**

Wanda M. Miles
Official Court Reporter
District Court of Guam

EXHIBIT 1

1    **APPEARANCES:**

2

3    FOR THE PLAINTIFF:        UNITED STATES ATTORNEY'S OFFICE
                               BY:   KARON V. JOHNSON, Esq.
4                              ASSISTANT UNITED STATES ATTORNEY
                               Suite 500, Sirena Plaza
5                              108 Hernan Cortez Avenue
                               Hagatna, Guam  96910
6

7    FOR THE DEFENDANT:        TEKER TORRES & TEKER
                               Attorneys At Law
8                              BY:   Joseph Razzano, Esq.
                               Suite 2A, 130 Aspinall Avenue
9                              Hagatna, Guam  96910

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        HAGATNA, GUAM; MONDAY, JUNE 25, 2007; 8:34 A.M.

 2                            *  *  *

 3            THE CLERK:  Criminal case 07-00026, United

 4   States of America versus Brian William Elm, motion in

 5   limine to exclude testimony, or, in the alternative, ex

 6   parte motion for appointment of expert witness.

 7            Counsel, please state your appearances.

 8            MS. JOHNSON:  Good morning, Your Honor, Karon

 9   Johnson for the United States.

10            THE COURT:  Good morning, Ms. Johnson.

11            MR. RAZZANO:  Good morning, Your Honor, Joe

12   Razzano for the defendant.

13            THE COURT:  And the defendant is also present.

14            All right.  We're here on the defendant's

15   motion in limine to exclude testimony, or, in the

16   alternative, ex parte motion for appointment of the

17   expert.

18            You may proceed, Mr. Razzano.

19            MR. RAZZANO:  Thank you, Your Honor.  Woke up

20   this morning, I have a little cold, so try to bear with

21   me.

22            THE COURT:  Okay.  Need a Kleenex up there?

23            MR. RAZZANO:  No, we're okay, Judge.

24            THE COURT:  Okay.

25            MR. RAZZANO:  Today's motion is pretty simple.
```

1     It's a motion *in limine* to exclude the testimony of
2     Maria Cruz, a probation officer.  This is going to be
3     under Rules 401, 402, and 403.
4             Originally, Ms. Johnson said that she was
5     going to be called to testify regarding the acceptance
6     of responsibility portion of the Sentencing Guidelines.
7     Well, we believe that that portion of the testimony is
8     irrelevant.  It doesn't really matter what the
9     Sentencing Guidelines are.  The case is about whether
10    Mr. Elm lied or did not lie during his trial testimony.
11    And --
12            THE COURT:  What if he -- what if he told the
13    truth at the trial but perhaps gave false information
14    at the sentencing?
15            MR. RAZZANO:  Your Honor, then she has no
16    case.  That's exactly the point of this whole trial.
17    She has to not only prove in this case that the
18    testimony at trial was a lie, she has to prove that his
19    testimony at sentencing was true.  She can't do that.
20    It's impossible to do that.
21            Going back to the original argument, the
22    statements at sentencing regarding the Sentencing
23    Guidelines would be irrelevant in this case.  And if
24    they are relevant, under 401 -- or under 403, they
25    would be far more prejudicial than probative.  Because

1    what Ms. Johnson would be trying to prove at trial

2    would be that he lied to get off his sentence -- or,

3    I'm sorry -- he told the truth because he was told by

4    his attorney that he would get an easier sentence if he

5    accepted responsibility.

6              THE COURT:  Is that what defense attorneys

7    usually say?

8              MR. RAZZANO:  No, Your Honor, I can't testify

9    as to what every defense attorney tells their clients,

10   but I'm sure that Mr. Van de Veld explained to Mr. Elm

11   the significance of acceptance of responsibility.  And

12   there's a colloquy in the sentencing transcript where

13   the judge and Mr. Van de Veld are actually talking

14   about whether Mr. Elm can accept responsibility or not.

15             And, in fact, if you look at the sentencing

16   transcript, Mr. Elm doesn't really say anything; all he

17   says is yes, Your Honor.  I mean, the question is --

18   the judge says, well, Mr. Van de Veld, it's difficult

19   for me to give him acceptance of responsibility unless

20   he can say that he did something in between, or to

21   substantiate the jury's verdict.

22             Now, in this case, Judge, I don't think you

23   were the trial judge, but you will recall --

24             THE COURT:  No, I wasn't.  Was that

25   Coughenour?

1      MR. RAZZANO:  It was.

2      THE COURT:  Yes, that was Judge Coughenour.

3      MR. RAZZANO:  You'll recall when you were

4  studying these materials, Mr. Elm is not convicted of

5  the indicted charge; he's convicted of a lesser

6  included offense.  The charge in the indictment is over

7  50 grams of methamphetamine.  He's actually convicted

8  of a lesser included offense of between five and 50

9  grams.  Okay.

10      So when they're having the acceptance of

11  responsibility colloquy between the judge and Mr. Van

12  de Veld, the judge says, well, can he at least say that

13  he committed conduct that would fall -- that would

14  substantiate the jury's verdict.  Mr. Van de Veld says,

15  oh, I'm not sure he can do that.  The judge and him

16  talk back and forth, and finally he says, okay, I think

17  I can tell my client he can say that, and Mr. Elm says,

18  yes, Your Honor.  That's all he says, that's the entire

19  sentencing colloquy.  And that's the reason why we're

20  here on this perjury charge.

21      So, actually, when you go to look at the trial

22  testimony, when he says -- when Ms. Johnson says, why

23  didn't you plead guilty to this charge, and he says,

24  because I'm not involved, that statement is true, he's

25  not involved.  And the jury in fact found that he

1    wasn't involved.  He was not involved in the conduct

2    as indicted.

3             THE COURT:  Well, he was, if I'm not mistaken

4    -- let's see, I'm looking at this -- he was found

5    guilty of the conspiracy to distribute; correct?

6             MR. RAZZANO:  Between five and 50 grams,

7    that's correct, judge.

8             THE COURT:  But, okay, he was found guilty of

9    that, and the possession with intent, but as far as the

10   money laundering conspiracy and the actual money

11   laundering, he was found not guilty; correct?

12            MR. RAZZANO:  That's correct, Your Honor.

13   That's correct.  It's a 19-count indictment, he's found

14   guilty of two counts.  The other 17 counts thrown out

15   by the jury.

16            THE COURT:  Uh-huh.  Okay, go ahead.

17            MR. RAZZANO:  I'm glad the court is honing in

18   on these issues.

19            But I want to get back to why we're here for

20   the motion, and that is, that Mrs. Cruz's testimony is

21   going to be completely irrelevant.  And if it is

22   relevant, it is inadmissible under Rule 403 as all the

23   government is going to try to prove is that Mr. Elm,

24   understanding that he would get this acceptance of

25   responsibility as told by his attorney, goes ahead and

1    says, yes, Your Honor. Okay. And so she wants to

2    prove that because what he said at sentencing is

3    opposite, two inconsistent statements, that that's

4    somehow relevant.

5         Then, in her opposition memorandum she comes

6    back and says, well, she's not just going to testify

7    as to the law of the Sentencing Guidelines, now she's

8    going to testify about her interview with Mr. Elm.

9    Well, I think that's completely inappropriate. I mean,

10   Mr. Elm submits himself to the presentence report so

11   that the court can have an idea of what his sentencing

12   range might be. He's never Mirandized, he's never told

13   that this is an investigatory function, and now the

14   government wants to bring her forward to testify as

15   to that interview. It's completely inappropriate.

16        THE COURT: In your experience, Mr. Razzano,

17   in Federal Court, I'm just curious, have you ever had

18   a case like this, where this type of charge was brought

19   after trial? And I'm not saying it's the wrong thing

20   to do, because I think the U. S. Attorney's Office

21   clearly has the executive power to do so; I'm just

22   curious, in your experience, have you seen this happen?

23        MR. RAZZANO: No, judge, I've never seen this

24   happen. But I'm glad that you asked me this question

25   because I was a little -- I was thinking about this

1    this morning.  I didn't really want to bring this up,

2    but, since you bring it up, when I was a clerk in this

3    court, we actually had a situation where the Defense

4    Bar got together and said, well, we can't allow the

5    defendants to talk to the pretrial services people

6    anymore, or to probation.  Okay.  And it was directly

7    because, I mean, the defense bar would show up and they

8    would want to testify as to what was going on during

9    those interviews.

10          Pretrial services, probation, that's an arm of

11   the Judicial Branch.  It is not an investigatory

12   branch, it's not part of the Executive Branch.  It's

13   not appropriate to use those statements, which are to

14   help the court determine what it should do, against

15   these guys.  And if they are going to do that, then I

16   think once again, we're going to have to go back not

17   allowing our clients to just talk to anybody, including

18   pretrial services, including probation.

19          THE COURT:  But suppose if, suppose you're

20   correct, if there is an attempt to use those statements

21   made in the course of those investigations, but if

22   we're talking about what happens at the sentencing and

23   what happens in trial, that's different, trial is under

24   oath, sentencing is in open court.

25          MR. RAZZANO:  That's correct.

1        THE COURT:  Okay.  So your objection, though,

2    in terms of what the defendant may have said to Maria,

3    the probation/pretrial officer, I think may be a sound

4    objection.

5        MR. RAZZANO:  Well, we agree, Your Honor.

6    And if, in fact, you were going to let her, in the

7    alternative, if in fact you were going to let her

8    testify as to what the Sentencing Guidelines are all

9    about, we believe we need an expert witness, an

10   attorney in the area, to come in and testify as to what

11   the Sentencing Guidelines mean, especially in light of

12   the recent cases <u>Booker</u> and <u>Fanfan</u>.

13       THE COURT:  Well, what if -- yeah, because I'm

14   kind of like fifty-fifty on this, and I want to hear

15   from Ms. Johnson, of course.  But who would you

16   recommend?  I mean, and you've had, again, experience

17   in Federal Court, and  you know who's --

18       MR. RAZZANO:  Well, we would -- yes, judge, we

19   would like to call either the Federal Public Defender,

20   John Gorman, or we would like to call Rawlen Mantanona,

21   the President of the Bar Association, to testify as to

22   those matters.

23       THE COURT:  Is there an issue, and I don't

24   know, just off the top of my head, is there an issue

25   calling the Federal Public Defender as an expert?  Is

1  there like an internal -- I'm not sure.

2  MR. RAZZANO:  I'm not sure.  I actually talked

3  to John about that, and he said before he would be able

4  to accept that job of testifying as an expert, he would

5  have to clear it through the Federal Public Defender.

6  So it might actually be easier to appoint Mr. Mantanona

7  on this case, although, again, I don't know if he had

8  any of the co-defendants in this case; that's something

9  else we need to look at.  I understand there were some

10  co-defendants in this case.

11  THE COURT:  I thought he did, and Ms. Johnson

12  might know better.

13  Ms. Johnson, did he?

14  MS. JOHNSON:  Lots.

15  THE COURT:  Okay, that's what I thought,

16  because I was like -- yeah.

17  MR. RAZZANO:  So we may need to either find

18  somebody else on the panel --

19  THE COURT:  Oh, I suppose we could -- yeah,

20  that's true.  Yeah, even Mr. Gorman's office I'm sure

21  had some.

22  MS. JOHNSON:  (Nodding.)

23  THE COURT:  Right.

24  MR. RAZZANO:  I think Mr. Gorman's office may

25  have, may have represented Eric Aponik, I'm not sure.

1    But, nevertheless, if they're just going to testify as

2    an expert just about the Sentencing Guidelines and not

3    about the facts of the case, that might be

4    substantially different.  But we should be careful.

5         THE COURT:  Yeah, I agree.  Yeah, I agree, if

6    it's just focusing, because that would be, the

7    expertise would be just a focus on the explanation of

8    the Sentencing Guidelines, I assume.  And then of

9    course I'll ask Ms. Johnson to give me the specific

10   offer of proof.

11        MR. RAZZANO:  Okay.

12        THE COURT:  Anyone else, though?  Let's

13   assume, you know, because I would leave that to you

14   two.

15        MR. RAZZANO:  I think anybody on the panel,

16   Jay Arriola, or anybody else that's on the CJA panel

17   would have the proper expertise to testify as to the

18   Sentencing Guidelines.  Otherwise, I could call former

19   Judge John Unpingco to testify about it.  I prefer not

20   to call anybody off island, because that's going to

21   cause significant delay in the trial, but if that's

22   what we have to do because of the conflicts of

23   interest, then that might be what we have to do.

24        THE COURT:  Okay.

25        MR. RAZZANO:  Now as a final point, not

1   to belabor this, but in her opposition brief,

2   Ms. Johnson's opposition, she raises I guess what I

3   have to call a motion, she files basically a motion to

4   not accept my trial exhibit, and that is the redacted

5   testimony of Mr. Elm at trial, that's pages 45 through

6   49.  And of course, she doesn't want to redact that

7   testimony, because during that cross-examination period

8   Mr. Elm testifies that, yes, he did lie to a police

9   officer on one occasion, and then she makes some

10  allusion to the fact that he may have misreported his

11  W-2 statements or his 1040 statements to the Department

12  of Revenue and Taxation, and he denies it.

13          But, nevertheless, what Ms. Johnson wants

14  to use those pages for is to show, oh, well, he lied in

15  the past so he lied this time.  Well, that's completely

16  inappropriate, and it's not relevant to the trial.

17  And if it is relevant, under 403 it's way more

18  prejudicial than probative.

19          And what she has to prove is what she

20  indicted.  And she indicated three statements that

21  occurred at trial, she has to prove that those

22  statements are false.  But she's given herself an added

23  burden now of now having to prove that his statements

24  at sentencing are true.  And that's the only way she

25  can prove this case.  And in fact, I'm doing some

1   research now, Judge, I think there's a case called

2   *Brontzon versus United States*, and I may file another

3   motion based on *Brontzon*, which says that she cannot

4   use these two inconsistent statements because both

5   statements are not under oath.  In fact, one statement

6   is under oath.

7           THE COURT:  The statements, you mean, at the

8   sentencing proceeding?

9           MR. RAZZANO:  That's correct.  Yes, Judge.

10  And as you know, you can't charge a 1623 at sentencing

11  because it's not a false declaration made under oath,

12  it's just an allocution, that's all it is.

13          THE COURT:  What is -- okay, I'm looking at

14  page 45 through --

15          MR. RAZZANO:  49 or 48.

16          THE COURT:  49.

17          MR. RAZZANO:  It's testimony about a --

18          THE COURT:  Let's focus, specifically, what

19  are we focusing on now, page 45 line 16 through 20?

20          MR. RAZZANO:  Judge, I don't have it in front

21  of me.  But on those pages there's basically cross-

22  examination which says Mr. Elm was in Tumon one day, it

23  was 3:00 o'clock in the morning, police officer pulls

24  him over, he has a backpack, inside the backpack there

25  is a vial of methamphetamine and a loaded 9-millimeter.

1   And he says, oh, the backpack is not mine, and of

2   course, you know, it probably was. And so he admits, I

3   think, during the trial testimony; she said, did you

4   lie to the police officer, and he says, yes. And it's

5   going to be way more prejudicial for the jury to hear

6   something like that.

7          THE COURT: Well, the specific question, "and

8   you didn't know anything about the gun or the ice in

9   there" -- yes, the answer is yes; "that was a lie,

10  wasn't it?" Yes. That particular --

11         MR. RAZZANO: Yeah, that particular.

12         THE COURT: Zero in on there.

13         MR. RAZZANO: Yes. And then several pages

14  later, or two or three pages later it goes through the

15  W-2 statements, and how are you buying these

16  motorcycles, and you don't make that kind of money, et

17  cetera, et cetera.

18         THE COURT: I guess I have to ask you

19  specifically where -- is it an exception to the hearsay

20  rule? What exception is it then, or is it non-hearsay?

21         MR. RAZZANO: You know, Judge, I'm not arguing

22  that it's hearsay, because it probably is an admission

23  of a party opponent, so it's --

24         THE COURT: So it's non-hearsay.

25         MR. RAZZANO: -- probably non-hearsay. The

1    question is: Relevance.  Is it relevant to this trial?

2    I don't see how it's relevant to this trial.  Whether

3    he lied to a police officer in August of 2005 or 2006,

4    I think it was 2005, what does that have to do with

5    whether he told the truth here during his jury trial.

6    It has nothing to do with that.  She simply wants to

7    tell the jury, he's lied in the past, so he's lied

8    today.  And that's inappropriate, that's going to

9    poison the jury to thinking that what he said was a

10   lie.  It's not right.

11        So under 403 is where I really lay my

12   objection.  403 is, is it more prejudicial than

13   probative.  And I think the court in its discretion can

14   make that decision under 403.

15        THE COURT:  We have the issue, is the

16   probative value substantially outweighed by the danger

17   of unfair prejudice.

18        MR. RAZZANO:  That's right.

19        THE COURT:  It's the weighing that the court

20   has to engage in.

21        MR. RAZZANO:  And I think the court, after

22   it analyzes it, will realize that it's far more

23   prejudicial than probative in this case, because it

24   really has nothing to do with whether he told the

25   truth at his trial.

1    And, in fact, if that statement is true, and

2    she's going to present that statement as true before

3    the jury, why aren't his other statements at trial

4    true? "I wasn't involved;" that is true, he wasn't

5    involved in the indicted conduct. That's correct.

6         THE COURT: Well, in some of the indicted

7    conduct, that's what you're talking about, because he

8    was at least found guilty of two, two counts which he

9    indicated, okay, I was involved, to a certain extent

10   in the sentencing, right, at the time of sentencing.

11        But on the other counts where he's found not

12   guilty -- I'm just trying to understand this because

13   I wasn't the trial judge at the time -- but the other

14   remaining counts, which are a substantial number on the

15   money laundering, he was found not guilty, right? So

16   I'm just -- you know, it's hard to get into the mind of

17   what was going on, mind of the defendant. It's also

18   difficult to know what was happening at the trial

19   because I wasn't there.

20        MR. RAZZANO: I agree, judge, that's why this

21   trial is going to be very difficult, how can you crawl

22   into the mind of another person. And even when he says

23   at sentencing, all he says is "yes, Your Honor". I

24   mean, the defense attorney and the judge go through a

25   colloquy that goes for about a page.

1          THE COURT:  Do I have that?  Is that in the --

2          MR. RAZZANO:  It's in the government's trial

3   exhibit as No. 3.

4          THE COURT:  Okay, I think I have -- I was

5   looking at the trial testimony.  I think maybe I do

6   have that.

7          MR. RAZZANO:  You should have the sentencing

8   transcript as well, Judge.

9          MS. JOHNSON:  It's Exhibit 3.

10          MR. RAZZANO:  It's Exhibit 3 of the

11   government's trial brief.

12          When you go through there, judge, you'll read

13   it and you'll see the colloquy between the Judge and

14   Mr. Van de Veld.  And it's not as if Mr. Elm stands up

15   and says, oh, yes, judge, let me give you a complete

16   allocution, I'll run through the elements with you.

17   All he says is, yes, Your Honor, and it's basically

18   yes, Your Honor to a statement that Mr. Van de Veld

19   said, okay, I think you can say that.  So based on

20   basically advice of counsel, he goes ahead and says

21   yes.

22          Anyway, judge, I think that's the crux of the

23   motion, and I'll let Ms. Johnson respond.

24          THE COURT:  All right, thank you.

25          Ms. Johnson.  First, Ms. Johnson, can you tell

1  me specifically, what is it in the transcript that you

2  wish to focus in on, on pages 45 through 48, if you can

3  look and give me the page and the lines.

4      MS. JOHNSON: Well, I was surprised when

5  counsel filed this motion, because there's nothing in

6  there that's any more prejudicial than the rest of his

7  testimony. It's just that I can't -- when I'm

8  introducing a person's testimony at trial, the

9  circumstances and everything that they say is relevant.

10  I can't go picking out parts.

11      So much of this trial is just boring as all

12  getout, because you're talking about telephone records

13  that the jury isn't going to have, and deposits the

14  jury isn't going to have, and their eyes are going to

15  glaze over. But I can't see how I can get around

16  presenting that evidence. If I could, I would redact

17  it, but I think I've got to present it, because it's

18  part and parcel of what the defendant said. That's why

19  I introduced the whole transcript, because I think one

20  has to.

21      THE COURT: But the focus, though, the

22  prejudicial part that he's focusing in on is "that was

23  a lie, wasn't it," and the defendant says yes.

24      MS. JOHNSON: And I'm getting to that. When

25  Joe filed his motion I'm thinking, why does he think

1    that's prejudicial?  And I figured out what it is.  And

2    it makes it extremely relevant to what's going on.

3         The answer to the relevance of this testimony,

4    the defendant at trial maintains his complete

5    innocence.  He said he hadn't dealt drugs in 11 years,

6    since 1996 when he dealt drugs, and Duane Calvo was his

7    source.  And I believe that because I prosecuted and

8    convicted Duane Calvo in 1996.  Anyway, that was --

9         And he called his probation officer to say the

10   man has been testing urinalysis for years, he's clean

11   as a whistle, he's not using ice.  The witnesses at

12   trial said they were smoking with him all the time.  So

13   he maintained his complete innocence at trial.

14        And now the defendant says, well, he didn't

15   lie at trial because he in fact was distributing but

16   only between five and 50 grams and he would have pled

17   guilty to that.  So the jury -- if that's the defense,

18   and I think that's what the defense is going to be, the

19   jury is going to be asked to decide one of two things:

20   Whether his trial testimony was a denial of any drug

21   dealing, or whether it was a denial of only more than

22   50 grams of drug dealing.

23        THE COURT:  So can you repeat that, was the

24   defendant's trial testimony a denial --

25        MS. JOHNSON:  A denial of any drug dealing, or

1  was it a denial of only more than 50 grams of drug

2  dealing.  And that's where Ms. Cruz's testimony is

3  necessary for two reasons.  First, the fact that he

4  told her he was going to appeal the sentence.  Counsel

5  was present.  He didn't make a statement.  She asked,

6  do you want to make a statement?  He didn't make any

7  statement; he said we're going to appeal the sentence.

8  The fact that they're going to appeal is evidence that

9  they considered the testimony at trial to be a denial

10  of any drug dealing.  Because once he admits that he

11  was dealing between five and 50 grams, the appeal is

12  over.

13          So, I think the jury is entitled to know that

14  at trial he had lied -- a stake, we believe he lied at

15  trial, that he was going to appeal his conviction, but

16  when the presentence report comes out and he

17  understands that he can get a two-level reduction if he

18  just admits that he did it, because he's opportunistic,

19  because he lies whenever he can see an advantage, he

20  said I did it, I did it.  I think when you look at

21  Curtis's testimony -- I mean, Curtis's statement, he

22  seems to have forgotten what Mr. Elm said at trial.  I

23  found it astonishing when he did this, because at one

24  point he, Coughenour says, I think he did admit to some

25  trafficking.  No, he did not.

1    But in terms of why the statement to the

2    officer is -- his defense was that I'm convicted of

3    three felonies, and of course, we see this defense very

4    often, I'm convicted of three felonies, I pled guilty

5    to those because I was guilty, but I'm not guilty of

6    this, and that's why I'm going to trial. The

7    implication being that I've been honest and straight-

8    forward with the system throughout, when I'm caught and

9    I'm guilty, I plead guilty. This incident with the

10   police officer is evidence that in fact that's not

11   true. That when he's initially caught he tries

12   to wiggle out of it, and when -- he could hardly deny

13   it's his backpack and he's got a gun in it, then he

14   pleads, not because he expunges or purges his soul, but

15   because he's caught and he has no choice.

16   So it's such a minor point, I could understand

17   why they wanted to keep it out, but the more I think

18   about it, the more I think that it's important, because

19   it shows a mindset, and it showed his mindset at trial.

20   THE COURT: But show me, okay, specifically

21   what is it that you want in. Let's start with the

22   trial transcript.

23   MS. JOHNSON: I want to introduce the whole

24   transcript.

25   THE COURT: You want to introduce the whole

1      transcript from 45 through 49, right?

2         MS. JOHNSON: Including 45 to 49. If I may

3      also make a parenthetical --

4         THE COURT: What do you mean including, you

5      want to introduce the entire trial transcript?

6         MS. JOHNSON: Oh, I have to, that's Exhibit 2.

7      I have no choice.

8         THE COURT: Okay.

9         MS. JOHNSON: I've done many perjuries, and in

10      the past I've tried to pick and choose a transcript and

11      I've just had nothing but objections. The whole thing

12      has to come in.

13         THE COURT: Right. Okay.

14         MS. JOHNSON: I was -- I didn't understand why

15      Mr. Razzano wants to take out the part about the

16      motorcycles. My objection, of course, would be it's

17      completely boring, if I were the defense. There was no

18      question about him lying on his W-2s, his W-2 showed

19      he's a lifeguard, he made I think $4,000 one year and

20      $6,000 the other, he didn't deny that. The whole

21      question was how he could afford these fancy motor-

22      cycles when he's working part-time as a lifeguard. But

23      there's no allegation --

24         THE COURT: I saw that. I mean, that was

25      focused in that selected transcript.

1    MS. JOHNSON: (Overlapping.) -- about any

2 income reporting. I don't know why counsel thinks

3 that, but I don't think he did. And I had his W-2.

4 There wasn't an issue, I asked him isn't it true that

5 you reported I think so much income, and he said he

6 didn't remember.

7    THE COURT: Well, let me just ask. If we

8 submit the entire transcript, would we have to redact

9 all the objections? I would think so. Assuming for

10 the sake of argument I allow that, because, I mean,

11 some of that is not --

12    MS. JOHNSON: (Overlapping) Well, I would not

13 object to redacting the objections.

14    THE COURT: I'm sorry, you would not object --

15    MS. JOHNSON: I would not object to it. But

16 the transcript -- where I'm in a position of is I have

17 no choice but to offer the whole thing. If counsel

18 wants to take out various extraneous objections and

19 recesses and other matters, that's fine with me.

20 Anything to cut that transcript down would be great.

21    THE COURT: Well, it's not that long anyway.

22    MS. JOHNSON: Well, when Mr. Bowman is on the

23 stand reading it, it's going to be long, it's going to

24 be boring. That's the problem with trying cases like

25 this, you're stuck with a piece of paper instead of a

1    live witness.

2         THE COURT:  Okay.  So, specifically, and I'm

3    looking at Exhibit 2 -- or Exhibit B I should say,

4    Exhibit B.

5         MS. JOHNSON:  Exhibit 2 for the government,

6    that's his trial testimony.

7         THE COURT:  Okay, Government's Exhibit 2,

8    right, Transcript Of Proceedings, Defendant'S Trial

9    Testimony, and it's actually starting on Page 4, 4 to

10   44, is that -- wait a minute, let me verify this.

11        Oh, no, it keeps on going.  Four to what,

12   where does it end here, 71, is that it, Ms. Johnson.

13        MS. JOHNSON:  Until he's excused as a witness.

14   I think there was some direct, redirect after my cross.

15        THE COURT:  All right.  So you want the entire

16   trial transcript?

17        MS. JOHNSON:  I have to offer it.

18        THE COURT:  Well, right, I don't disagree that

19   you have to at least try to do that.  All right.  And

20   what in particular, though, in the entire trial

21   transcript, the specific sections though would

22   substantiate your charge against the defendant as to

23   Count One, Count Two, and Count Three?

24        MS. JOHNSON:  Well, the transcript -- pardon

25   me, I'm getting a cold too.

1    The transcript as a whole has to come in,

2  because you have to establish the circumstances, the

3  issues at stake, who was saying what, what he denied.

4  I don't see how you can -- how you can get around

5  introducing the transcript because it's relevant, his

6  testimony, it puts his testimony in context.  And

7  that's what perjuries are, of course, is contextual

8  testimony.

9    THE COURT:  Well, I suppose it's here, you've

10  noted it here, I mean you've focused in on the specific

11  trial transcript -- or you're bringing in the whole

12  thing, but you're focusing on the exact sections of the

13  transcript.

14    MS. JOHNSON:  Well, you have to, you have to,

15  for pleading purposes you have to say what specifically

16  questions and answers were false.  And I picked out the

17  most obvious ones.  Those are not the only ones, but I

18  picked out three of the most obvious.  And if those

19  three don't do it, nothing's going to do it.

20    THE COURT:  Okay.  What about the fact that

21  the defendant was found not guilty of a majority of the

22  charges?

23    MS. JOHNSON:  Well, you'll notice that --

24  I wasn't sure what to do with that.  He had a co-

25  defendant also, there were a total I think of six or

1    eight people in this conspiracy.  Going into trial it

2    was just him and Mr. Espinosa.  The defendant started

3    this conspiracy and he dropped out, because he had to

4    go back to jail.  And by the time his brother-in-law

5    was caught, which was several months later, the initial

6    characters had completely dropped out except for the

7    distributor, and it was Mr. Espinosa who was sending it

8    from Las Vegas.  And so this indictment has the

9    beginning and the end pled in the indictment, and the

10   money laundering count especially concern Mr. Espinosa.

11       I submitted a redacted indictment, and leave

12   it up to the discretion of the court or counsel.

13   Ordinarily I'd introduce the entire indictment, but I

14   didn't know if there would be objections to the counts

15   on which he was acquitted, because they're really not

16   relevant to the case, and so I did a redacted

17   indictment.  But if counsel has no objection to the

18   initial indictment going in, that's fine with me.

19       THE COURT:  It's not so much the redacted

20   indictment, it's the trial testimony, because it

21   involves the whole issue of the redacted charges where

22   he was found not guilty.  So that's a concern I have,

23   because the jury may hear -- you know what I'm saying,

24   the jury may hear information that --

25       MS. JOHNSON:  But as counsel points out, I

1     have to prove that he lied at trial. And the

2     statements that he made at trial concerning, for

3     example, the reason that Mr. Cruz was calling him six

4     times a day from Merizo, are relevant to judging

5     whether he was telling the truth at trial.

6     THE COURT: Well, no, let me just say, and I'm

7     just trying to understand it, because there are really

8     different instances of potential lying here. And,

9     okay, if I'm not mistaken, on page 45 the defendant is

10     saying I had lied -- you didn't know anything about the

11     gun, that was a lie, wasn't it. This was a statement

12     he made to the police, right?

13     MS. JOHNSON: Well, initially, because I had

14     the police reports from that arrest -- he was arrested

15     in Tumon riding a motorcycle, I think he blew a light

16     or something, and in his backpack was just a user

17     quantity of ice plus this gun. Of course, he's an

18     ex-con, he couldn't carry a gun, and when the officer

19     opens the backpack and says, whose gun is this, the

20     defendant says, I don't know, I just found it.

21     THE COURT: Okay. So here you have, okay,

22     I'm just understanding the context of the timeline.

23     So back then upon the arrest when he was out there with

24     his motorcycle, potentially he was lying to the police

25     officer. And then maybe, you know, Mr. Razzano can

1  correct me if I'm wrong, and maybe he did go to trial

2  and he's admitting, yeah, I was lying, now I'm telling

3  the truth, I was lying to the police officer at the

4  time.  So he's actually allegedly telling the truth at

5  trial.

6          MS. JOHNSON:  That's right.

7          THE COURT:  And then we have, on the time

8  line, then we have sentencing before Judge Coughenour

9  where he's trying to accept responsibility because he

10  wants the benefit of the deal.

11          MS. JOHNSON:  That's the theory of our case.

12          THE COURT:  But you're saying, though, that at

13  trial he was lying under oath.

14          MS. JOHNSON:  That's right, and that's what I

15  have to prove.  Now, I need to --

16          THE COURT:  In comparison to where, in

17  comparison to the arrest or in comparison to at

18  sentencing?

19          MS. JOHNSON:  The 2002 arrest was for his

20  third conviction, which he had already pled guilty and

21  been sentenced by the time he came to trial.  In fact,

22  as I recall that's the one that his probation was

23  pulled on and why he had to go back to jail, and ended

24  up turning over the scheme to his brother-in-law

25  because he had to go back to jail March 18 of 2005.

1          Uhm, I forgot the question.

2          THE COURT:  I guess I'm just trying to

3    understand.  You're saying that you want to prove that

4    he was -- it is your intention that he lied under oath

5    at trial before the jury --

6          MS. JOHNSON:  Yes.

7          THE COURT:  -- under these three different, at

8    least these three specific occasions which are noted in

9    the redacted indictment -- or not redacted, the

10   indictment, the current indictment before the court.

11         MS. JOHNSON:  The current indictment charges

12   three counts.

13         THE COURT:  Right.  And I hear Mr. Razzano

14   saying, well, she's not going to prove he's lying, he

15   actually could have been telling the truth, he was

16   really lying way back then as it relates, you know,

17   with the arresting officer as it relates to the

18   backpack question.

19         MS. JOHNSON:  You know, the backpack question

20   is just so unimportant, it just is so peripheral.

21         THE COURT:  (Overlapping.)  Yeah, but, I mean

22   but that --

23         MS. JOHNSON:  Actually if it's going to

24   confuse people, and it's confusing you, it's going to

25   confuse the jury.

1    THE COURT: Well, it's not confusing me, I'm

2  just concerned because it says -- I mean, he's saying

3  and you didn't anything about the gun or the ice in

4  there, yes, that was a lie, wasn't it, yes, I mean, the

5  jury is going to say, wow, he said he lied, he lied.

6  But the question is, when did he lie, and you're saying

7  he lied at trial.

8    MS. JOHNSON: Well, he lied in 2003 also. I

9  mean --

10   THE COURT: He lied at both times?

11   MS. JOHNSON: Yeah. Sure. I mean, when you

12 have a gun in your backpack, and the officer says,

13 who's the gun, you say, I don't know where the gun came

14 from, yeah. And he pled guilty to that charge

15 ultimately.

16   THE COURT: Yeah, but he's saying now, but

17 he's stating on the record that he did lie.

18   MS. JOHNSON: Yes.

19   THE COURT: So, isn't that telling the truth

20 that he lied about -- I mean, allegedly.

21   MS. JOHNSON: But that's not one of the counts

22 charged. I mean, he's charged with lying about the

23 drug conspiracy with his brother-in-law.

24   THE COURT: Okay, see, now therein lies the

25 problem. Therein lies the problem with the trial

```
 1    testimony.  I'm talking about, if we start getting
 2    certain testimony -- I understand what you're saying,
 3    you're saying, judge, look, in order to be fair to the
 4    defendant, we have to have everything in there and
 5    without all these objections.  But on the other hand,
 6    keeping all of that testimony in there also means that
 7    the  defendant can be prejudiced because -- stuff like
 8    that, hey, he admits to being a liar, and it may not be
 9    relevant to the actual indicted charge before the
10    court, but that could be very prejudicial to him, and
11    irrelevant.
12         MS. JOHNSON:  Well, even as you talk, it
13    occurs to me it could be prejudicial to me, because the
14    defense could say, well, he had lied before and he told
15    the truth on the stand, so let's take that out.  I
16    concur with counsel's motion, take it out.
17         THE COURT:  I agree.
18         MS. JOHNSON:  But the motorcycle business, I
19    mean you can take it out or not, but it's not relevant
20    to anything, it's just more --
21         THE COURT:  Oh, I agree.  But my point is, but
22    you wanted that in, you want the jurors to hear that,
23    and it could be really hurtful to your case, and it's
24    definitely hurtful to the defendant.  It's very
25    prejudicial.
```

1          MS. JOHNSON:  Let's take it out.

2          THE COURT:  That's what I'm saying.  I think,

3     Ms. Johnson, that if we're going to bring in anything,

4     we have to be very careful, that's why I want to know

5     exactly what you're going to bring in in the trial

6     testimony.

7          MS. JOHNSON:  Well, other than that, I think

8     the whole transcript has to come in.  And I think it

9     has to come in to -- Mr. Bowman when he testifies is

10    going to give the jury an outline of the case so that

11    they understand the context in which this testimony was

12    made.  So that, for example, when we have questions

13    about Eric Aponic, they know who the heck Eric Aponik

14    is.

15         THE COURT:  Okay, I guess, again, I don't --

16    I understand your -- I understand how, your strategy,

17    you feel you have to do that, but again, how do we

18    insure that the jurors aren't affected by the fact that

19    this defendant was charged with numerous counts, and

20    although to his benefit he was found not guilty on many

21    of the counts, also within the trial transcript, I

22    believe, there's testimony about this whole conspiracy,

23    money laundering which he was found not guilty, the

24    money laundering stuff he was found not guilty.

25         MS. JOHNSON:  Right.

1         THE COURT: So how do we -- How do we -- you

2  know, shouldn't that be redacted, those sections, those

3  portions, if any?

4         MS. JOHNSON: I don't know. I'll look at the

5  transcript with that in mind. I don't know if that can

6  done. Well, I'll look at it, but you get things that

7  are so interwoven that if you start pulling things out,

8  they wouldn't make any sense.

9         THE COURT: Well, then what we have to do,

10  assuming that I allow some or all of it in, then we

11  would have to clearly have a limiting instruction to

12  the jurors.

13         MS. JOHNSON: Well, they're going to notice

14  that there are parts missing and they're going to

15  wonder what are those blanks, unless --

16         THE COURT: Isn't there a way that you can --

17  isn't there a way that you can look at the trial

18  transcript, the trial testimony of this defendant in

19  particular of course, and just, just redact those

20  portions that are irrelevant and just keep in what you

21  think is just germane to, and material, relevant and

22  material to your case.

23         MS. JOHNSON: I'll be glad to do that, because

24  if I can cut it down, it becomes much more effective.

25  I don't know if you've read the trial testimony, but

 1   Curtis went on for half an hour about the time that

 2   bank deposits were made, and I never saw the relevance

 3   of that.  That stuff I'd happily take out.  But counsel

 4   said he's going to object to it because he's got a

 5   right to the whole thing.

 6           THE COURT:  Well, he's objecting, right now

 7   he's objecting.

 8           MS. JOHNSON:  But as I say, if that's the only

 9   objection he has, then I'm agreeing we should take out

10   that part, then I think we're done, unless the court

11   wants me to take out more.

12           THE COURT:  Well, I guess because you know

13   your case better than I do, Ms. Johnson, I don't know

14   your whole strategy and everything, but clearly I can

15   see why there could be issues within the trial

16   transcript that would be prejudicial to the defendant

17   that's irrelevant to the charges before the court.  And

18   so, somehow we either give a limiting instruction to

19   the jurors if we allow certain things in, will that be

20   enough to cure any problems, or somehow you have to go

21   back and just really look at the transcript and say,

22   okay, this is only what I want, period.

23           MS. JOHNSON:  What I would suggest is, because

24   Mr. Razzano knows, I think, what he considers

25   prejudicial, let him prepare what he thinks to be a

```
 1   suitable trial transcript and I'll look at it.
 2            THE COURT:  Well, why don't we -- I think both
 3   ways, your offer of proof is, judge, I want to bring in
 4   the whole thing, you're right; and he's saying, well,
 5   the whole thing is not acceptable.  Yeah, maybe he can
 6   give you an offer of the transcript that's relevant to
 7   your charge, maybe we can do it that way, it might be
 8   easier.
 9            MS. JOHNSON:  I assume that everything was
10   acceptable, or he would have objected to that too.
11            THE COURT:  Yeah, I'm not sure, I'd have to
12   clarify that with him.  But anyway, go ahead.
13            MS. JOHNSON:  A couple of policy things I need
14   to talk about.  First of all --
15            THE COURT:  Okay, we will do that, by the way,
16   I'll take your suggestion that he submit specifically
17   --
18            MS. JOHNSON:  Yes, let Mr. Razzano do the
19   work.
20            THE COURT:  Okay, because now we know you want
21   the whole thing and --
22            MS. JOHNSON:  That's right.
23            THE COURT:  I don't think you have to, but I
24   could understand why you'd want to, to avoid any --
25   5,000 objections.
```

1      MS. JOHNSON:  In terms of why counsel said

2  he's never seen a case like this done, a perjury on

3  acceptance of responsibility, our policy in this office

4  is that people do not lie to the court.  We cannot have

5  people lying at trial, then coming in and reversing

6  themselves without penalty.  This is the first time

7  that I've ever seen a defendant convicted and then come

8  in and reverse his trial testimony.  And I'm still

9  trying to understand why Curtis did that.

10      My best explanation is that Curtis didn't

11  really remember what he said at trial.  But that's a

12  matter of policy and why we're doing it, so that a

13  person doesn't go to trial, lie on the stand, and then

14  come in and try to backpeddle, without consequences.

15      THE COURT:  And again, like I said,

16  Ms. Johnson, I'm not questioning your ability, your

17  executive power and decision to prosecute this case.

18  I was just curious if --

19      MS. JOHNSON:  This the first one.

20      THE COURT:  Yeah.  So this is the first time

21  in even all your years that you've seen this.

22      MS. JOHNSON:  That I've seen someone try to

23  accept responsibility after they've testified at trial

24  that they're flat out not guilty.  I thought it an

25  astonishing occurrence, but --

1    THE COURT:  You mean, in other words, when

2  they do that, they usually keep their mouth shut at the

3  time of sentencing.

4    MS. JOHNSON:  Oh, always, or they don't

5  testify at trial.  And of course they've got a right to

6  put the government to its proof, and sometimes after

7  they've been convicted, they'll come forward and try to

8  accept responsibility and say now I'm willing to tell

9  you everything.  I've never seen a case where someone

10  has testified and denied it and then tried to accept

11  responsibility.  That's very -- I've never seen it.

12    More to the point, counsel calls this a lesser

13  included offense --

14    THE COURT:  I saw that.

15    MS. JOHNSON:  Yeah, it's not.  The Ninth

16  Circuit law is that the quantity of drugs is not an

17  element of the offense.  It is a sentencing factor that

18  under *Apprendi* has to be decided by the jury.  This man

19  was not convicted of a lesser included offense; he was

20  convicted of conspiracy to distribute methamphetamine

21  hydrochloride.  The special verdict was on the amount,

22  under five grams, five to 50, or more than 50.  That's

23  not a lesser included, it is a sentencing factor.  In

24  fact, Ninth Circuit has specifically said that drugs --

25  the amount of drugs is not an element of the offense.

1     THE COURT: It just seems to me like, and
2  I understand what you're saying, it just seems to me
3  too that if, assuming it was, just theoretically, I
4  mean philosophically, if you assume it was a lesser
5  included offense because if you have 6,000 grams versus
6  five to 50 grams only, I mean obviously five to 50 is
7  less than 6,000. I'm saying just generally, I'm not
8  saying by elements or lesser included, but just
9  generally, even if you were to assume it was a lesser
10 included offense, I mean, drugs are drugs, you had
11 some amount, and so, if you're going to have any
12 responsibility -- I'm just thinking out loud -- then
13 you've done it, you know, if you've distributed or
14 conspired to distribute that amount, any amount under
15 the huge amount, then you in essence have been
16 responsible for something. I mean, I'm just thinking.
17     MS. JOHNSON: To be convicted of an offense
18 you have to commit all of the elements of the offense;
19 in this case, it's distribution, knowing distribution
20 of methamphetamine hydrochloride.
21     THE COURT: Period.
22     MS. JOHNSON: Period. That's the charge and
23 what he was convicted of.
24     THE COURT: Right. And I think we went over
25 that in the Duh Won Kim case. I recall that.

1    MS. JOHNSON: He was not convicted of a lesser

2  included, and counsel should not tell that to the jury

3  because it's not true, and it's the not law in this

4  circuit. And I think it introduces a confusing legal

5  factor. He was convicted of Count One.

6    THE COURT: Okay.

7    MS. JOHNSON: And then on another thing, he's

8  getting his perjury law mixed up. When he says we have

9  to prove that he lied before Judge Coughenour, there

10  was a section of the perjury law that if a person tells

11  contradictory statements under oath on two occasions,

12  the law holds that he committed perjury on one of

13  those, and the government doesn't have to prove which

14  one is true. It's a wonderful section of the statute,

15  I think I've used it once in 20 years, because it

16  doesn't happen very often. This is just a plain old

17  ordinary homegrown perjury on the witness stand. The

18  fact that he told the judge that in fact he had been

19  dealing is simply evidence that he lied at trial. This

20  is not one of those true statements under oath --

21    THE COURT: And where are you citing to?

22    MS. JOHNSON: Whatever the statute is here,

23  13 -- what is it? Perjury statute.

24    The false statement and perjury sections are

25  all in the 1622, 1621, 22 and 23.

1      THE COURT: But what are you looking at in

2   particular? I've got the 16, I see what you have cited

3   in the indictment before the court.

4      MS. JOHNSON: When you look at the, somewhere

5   in those sections there is a clause that if a person

6   tells contradictory sworn testimony, that the

7   government does not have to prove which statement is

8   false. I can't remember which section.

9      THE COURT: You don't have your section there,

10   your statute? I know it's 1623, in that genre --

11      Here, let me let you find it, Ms. Johnson, you

12   can find it in my book. 1623 is what you've cited the

13   defendant as allegedly violating.

14      MS. JOHNSON: Let me go back to my desk.

15      THE COURT: No problem.

16      MS. JOHNSON: Maybe I didn't -- given that

17   I've conceded the lying on the motorcycle I think we're

18   down to Ms. Cruz testifying. And again I think that

19   it's relevant in the sense that you have a logical

20   disconnect otherwise, the jury would wonder why he

21   said one thing at trial and another thing before the

22   sentencing judge, unless they understand that there was

23   a motive for telling the truth before the sentencing

24   judge because he was going to gain a benefit from it.

25      THE COURT: Well, what is there, in terms of

1   the offer of proof for Maria Cruz, the probation

2   officer, what is it, she's going to just going to

3   explain the Sentencing Guidelines?

4           MS. JOHNSON:  Yes.  What I say is, how are you

5   employed, what are your duties.  Among other things, do

6   you prepare  presentence reports for the court on

7   people who have been convicted; yes, I do.  And is

8   there a factor that you calculate the recommended

9   incarceration, is there a factor you consider; yes, the

10  Sentencing Guidelines.  What are the Sentencing

11  Guidelines; they're Guidelines put down by Congress

12  setting minimum maximum amounts generally for offenses

13  so that we have uniform sentencing across the country.

14  Okay.  Thank you.

15          Now, for Mr. Elm, what was his guidelines

16  range.  And then, what would acceptance of

17  responsibility do.  Just like the little chart that

18  I submitted, it reduces his guideline range.

19          THE COURT:  So basically she will be

20  testifying as to what she says in court.

21          MS. JOHNSON:  Yeah.

22          THE COURT:  Period.  But now what about this

23  issue that Mr. Razzano makes, which I think is a good

24  issue, that if a defendant is saying anything

25  incriminating during their probation presentence -- I'm

1   sorry -- during the presentence report investigation,

2   they want to feel at liberty to be able to speak to the

3   probation officers without the United States Attorneys

4   breathing down their back ready to prosecute them.

5           MS. JOHNSON:  Number one, that's why they have

6   counsel there, and counsel are there to tell them what

7   they should not say; number two, he didn't say

8   anything.

9           THE COURT:  Okay, so that's what I want to

10  make sure.  You're not trying to elicit anything

11  regarding any statement that he said, you're just only

12  trying to get her, if you will, expertise about the

13  Sentencing Guidelines, her knowledge.

14          MS. JOHNSON:  Part of what she'll say is,

15  during part of preparing the presentence report, we

16  interview the defendant with counsel present to see

17  if he has anything that he wants to add to the report.

18  In this case I asked Mr. Elm if he wanted to talk about

19  the offense and he said no, they were going to appeal

20  it.  When I --

21          THE COURT:  What's the relevance of that?

22  Forget this appeal part.  I mean, do you really need

23  that?

24          MS. JOHNSON:  It is one more piece of evidence

25  that in fact at the time that he was convicted -- you

1    see, where I think the defense is going is that they're

2    going to say it's true that I flatly denied being

3    involved, but that was over 50 grams.  If I would have

4    known that they were going to convict me between five

5    and 50, I would have admitted that in fact I was guilty

6    of five and 50.  And at the time, in other words, at

7    the time that he took the witness stand he knew in his

8    heart that he was guilty of less than 50 grams.  That's

9    going to be the defense, and that all these --

10          THE COURT:  I'll have to ask him.  That's a

11    good defense.  But go ahead.  I don't know if it's

12    going to be legally allowed.  But go ahead.

13          MS. JOHNSON:  Okay.  I think that's where

14    they're going, of course no one tells me, but -- and

15    the fact that he said I'm going to appeal this

16    conviction is evidence that in fact he did not have

17    that, because by the time he talked to Ms. Cruz --

18          THE COURT:  He did not have what?

19          MS. JOHNSON:  He did not have the intent to

20    admit that he was guilty of less than 50 grams.

21          THE COURT:  Yeah, but come on, Ms. Johnson,

22    really, on this issue of appeal, I think that -- I

23    don't know if you need that.

24          MS. JOHNSON:  Well, every time a judge tells

25    me that, I lose the case.

1     THE COURT: Well , I'm worried ---

2     MS. JOHNSON: Every time a judge tells me

3     that, out the door I go. I think that it is one more

4     factor. For example, if the defendant got on the stand

5     and said, golly, I was guilty of less than 50 grams,

6     then I would have acknowledged that at any time, I

7     should be able to ask him, well, why did you tell

8     Ms. Cruz that you were going to appeal this conviction

9     if in fact you were guilty of it. And if I can ask him

10    that on --

11    THE COURT: Well, you know, a defendant can

12    just say, I'm going to appeal because my lawyer told me

13    I'm going to appeal, I mean, they don't know anything.

14    I shouldn't say that, I mean some defendants are smart,

15    you know, but not that many defendants know their legal

16    rights. Everybody is going to say, I'm going to appeal

17    because the jury screwed up, they really messed up my

18    life, they didn't know what they were doing, whatever,

19    just generally, but there could very well be one little

20    teeny weeny issue --

21    MS. JOHNSON: Well, let's put like this then.

22    I won't use it in my case in chief, but if he takes

23    the stand, I should be able to cross-examine him on it.

24    THE COURT: Well, maybe we can discuss that if

25    it's relevant, but I don't think on the issue -- I

Case 1:07-cr-00026    Document 39    Filed 07/12/2007    Page 50 of 67

```
1   think if you're going to keep Maria Cruz to focus just
2   on the Sentencing Guidelines and how she did her
3   formulation and what her duties are, I don't think
4   that's a problem.  But to say anything else, I just
5   feel a little concerned about that, unless you have
6   case law that says I can do it, I might do it, but I
7   just don't -- I just don't think we should tread on
8   that.
9           MS. JOHNSON:  Hmm.
10          THE COURT:  Okay.  I'm not trying to make you
11  lose your case, I'm just saying -- okay.
12          All right.  So the court will allow Maria Cruz
13  to testify.
14          Now, I don't think you have standing to object
15  to them bringing in their big guns.
16          MS. JOHNSON:  That's why I did not file an
17  objection.
18          THE COURT:  I didn't think you would.
19          MS. JOHNSON:  It's like asking for an
20  interpreter.  I'm going to object?
21          THE COURT:  Good, we're on the same.  Let me
22  just ask you -- all right, so it might be good, it
23  might be good, like you said, I'll have Mr. Razzano
24  speak on this.
25          Now, here's my case, let me just tell you my
```

1   situation the rest of this week so you all know.  Of

2   course we have the other case coming up, which is

3   scheduled for 10:00 for jury selection.

4           Is that your case too, Ms. Johnson?

5           MS. JOHNSON:  Yes, Your Honor.

6           THE COURT:  Yeah, with Mr. Gavras on Xiang

7   Long Yao; that's still going to be forward, right?

8           MS. JOHNSON:  As far as I know.

9           THE COURT:  I just saw Mr. Gavras here, but he

10  just stepped out.  So what I'm going to do is at 10:00

11  o'clock we'll call in the jury on that case, and we

12  will -- actually we have a sentencing this afternoon, a

13  big sentencing, which I think might take a little

14  longer than what I would normally hope for.  And so

15  what I was thinking about doing is the jury right now

16  is processing; right?

17          MS. JOHNSON:  Is this a new panel?

18          THE COURT:  Yeah, it's a new panel.  So what

19  I'm going to do is just bring them in, and then we're

20  going to actually start jury selection fresh tomorrow

21  morning on the Xiang Yao case, because I don't want to

22  start it and then we have to leave, and I think it's

23  going to be a fast trial, it seems like it's going to

24  be easy.

25          MS. JOHNSON:  If I have an hour of testimony

1  total, I'll be doing well.

2          THE COURT:  Okay, that will be good.  And so

3  we could finish tomorrow, no problem.

4          MS. JOHNSON:  Yes, Your Honor.

5          THE COURT:  So what I'm going to do is start

6  that tomorrow, so we will be in trial tomorrow, which

7  is Tuesday, and then I was thinking about, you know,

8  hopefully we'll be done by Wednesday.

9          MS. JOHNSON:  We'll be done by Tuesday

10  afternoon.

11          THE COURT:  Well, I hope so, but every time I

12  say this, things happen around here, things get erratic

13  and emotional, and blah-blah-blah, and I'm not just

14  talking about the courtroom, elsewhere.

15          MS. JOHNSON:  The government has -- if I have

16  even an hour of testimony, if I can make this case seem

17  important enough to get an hour of testimony, I'm doing

18  well.

19          THE COURT:  Well, why don't we do this.  Why

20  don't we, because I don't know how much time -- we're

21  going to have to come back on this issue of the

22  transcript, because I think it's obviously very

23  important, it's crucial to your case in chief on the

24  Elm case.  And so, I think what we can do is safely say

25  let's start jury selection on the Elm case Thursday

1  morning, that will give you time, and give us a chance

2  to meet either tomorrow afternoon or first thing

3  Wednesday on the Elm, on the transcript, let's have the

4  parameters set out.  That will also give Mr. Razzano

5  enough time to speak to his expert, whoever that's

6  going to be.  And just so we can go straight through, I

7  don't like to be interrupted at trial, and I've asked

8  my staff to clear out everything.  And I know I think I

9  warned you last week, on any sentencings or motions

10  that have to go, let my staff now, but if they don't,

11  let's just try to get these trials done and over with

12  this week.

13          MS. JOHNSON:  Sounds good.

14          THE COURT:  Is that good?  Because you're the

15  trial lawyer.

16          Mr. Razzano, thank you, Ms. Johnson.  And try

17  to find that section, will you, Ms. Johnson?

18          MS. JOHNSON:  I will.

19          THE COURT:  When you have it, let me know.

20          Okay, Mr. Razzano, your response to the United

21  States Attorney?

22          MR. RAZZANO:  Okay, judge.  As to her

23  assertion that my understanding of the law is

24  incorrect, I respectfully disagree.

25          She is correct, 1623 does say that you don't

1   have to prove which statement is true and which

2   statement is false when you have two contradictory

3   statements made under oath. That's the key, made under

4   oath.

5          THE COURT: Okay.

6          MR. RAZZANO: The statement at sentencing is

7   not made under oath, so --

8          THE COURT: And it's very clear that it has

9   to be made under oath?

10         MR. RAZZANO: Under oath. I mean, that's an

11  element of the offense of 1623, a false declaration

12  made under oath. His statement at sentencing during

13  allocution is not made under oath. And so, therefore,

14  she cannot go on the theory, well, one statement he

15  said this, one statement he said that, I automatically

16  win. If that was the case, I probably wouldn't be

17  standing here this morning. But that's not the case.

18  She cannot rely on that theory. And if that's the

19  theory she's going to rely on, then the case may

20  possibly need to be dismissed. Okay. So that's on

21  that portion.

22         THE COURT: I thought so, but I wasn't sure.

23  Let me see if Ms. Johnson can elaborate after she looks

24  at that. But, go ahead.

25         MR. RAZZANO: I mean, the lesser included

1  offense, I think it's a lesser included offense.

2  Whatever the Ninth Circuit says, they're right. But

3  the fact of the matter is, the indicted conduct is over

4  50 grams. So when she says, why didn't you plead

5  guilty, she's saying, why didn't you plead guilty to

6  the indictment. And it's her indictment that says over

7  50 grams, not under 50, not five to 50, not zero to

8  five, it's over 50 grams. That's what the indictment

9  says, that's the indicted conduct.

10  THE COURT: So therefore your defense is going

11  to be -- which it could be surplusage though, you know.

12  Ms. Johnson, I mean, sometimes I suppose if you're a

13  prosecutor, and you don't put in the amount, the

14  specific amount, then the Public Defenders will say,

15  okay, we want a bill of particulars, and let us know

16  exactly how much drugs we're talking about. But let's

17  assume even that's surplusage, is that going to be

18  basically your defense, your client is going to say,

19  look, I would have pled to under 50 grams, but I was

20  charged with over 50 grams.

21  MR. RAZZANO: I'm not sure what our defense is

22  going to be. I mean, that might be one element of the

23  offense; the other part of the defense may be that he

24  told the truth at trial and he lied at sentencing.

25  Because if he lied at sentencing, he didn't commit a

1   1623 offense at sentencing because he did not lie under
2   oath.  So if he lied at sentencing, and it's just as
3   reasonable to believe that --
4            THE COURT:  I always wondered why we, you
5   know, sometimes in all my years as a judge, I always
6   wondered why we don't put the defendant under oath at
7   sentencing -- anyway, I always thought it would be a
8   good idea, but --
9            MR. RAZZANO:  Well, nonetheless, we don't.
10            THE COURT:  Yeah, we haven't.  I don't know if
11   there's a requirement that we do, or if we're not
12   allowed to.  But I just would think that -- anyway,
13   here we are today.
14            MR. RAZZANO:  Here we are.  On the policy
15   argument, I mean, what really is perjury for?  I mean,
16   historically -- and Ms. Johnson says she hasn't seen a
17   case like this, and neither have it -- historically
18   perjury is for government witnesses.  When you get a
19   government witness to plead, he gets up on the stand,
20   he tells you, oh, I'm going to testify that there was
21   money laundering, there was this, I was involved in the
22   conspiracy and I'm going to finger the defendant.  Then
23   he gets on the stand and says, I don't know, nothing
24   happened, I don't know what you're talking about, I
25   wasn't involved in the conspiracy.  That's what the

1  perjury charge is for, and that's when historically
2  it's been used. And as far as the policy of why we
3  have a perjury charge, that's why it's used. And of
4  course we have it because we want people to tell the
5  truth, and we want them to understand that when you are
6  under oath you have to tell the truth.

7          That's why it's far more reasonable to believe
8  that when Mr. Elm was on the stand under oath, he did
9  tell the truth. And at sentencing when he's not under
10 oath and his attorney says, yeah, you can say that, go
11 ahead and say it. Yes, Your Honor. Okay. That's far
12 more believable than, you know, he lies at trial, and
13 he tells the truth at sentencing. So that's the policy
14 portion of it.

15         On you wanting me to do all the work, I don't
16 mind doing the work --

17         THE COURT: Well, it's not that, she wants --
18 her offer of proof to the court is, she wants the
19 entire trial transcript in. I'm saying to her --
20 I can understand from a strategic point of view
21 the United States Attorney says, look, in order to
22 give context for this whole matter, yeah, we need to
23 bring in the whole trial transcript, she wants to avoid
24 50,000 objections, which there will be, I think.

25         MR. RAZZANO: Yes. Of course.

1      THE COURT: And so now she's saying, maybe it

2  would be better if you look at the trial transcript,

3  and I already did that part of your job for you, we did

4  it together, I think --

5      MR. RAZZANO: Right.

6      THE COURT: '-- and said that one part where it

7  says, this is a lie, I mean, yes, I did lie, well, hey,

8  that's pretty glaring and that's definitively going to

9  be used against your client.

10     MR. RAZZANO: Well, my thing is, it's the

11 government's burden to prove their case. I'll be happy

12 to look at the trial transcript. I mean, my initial

13 reaction is, let's get rid of all of it, because the

14 statements that are indicted could just as easily go to

15 the money laundering counts as any other count.

16     THE COURT: Well, that's what I said, and

17 that's why I think that there's an issue, because I

18 don't know which ones -- you know, you guys know the

19 intricacies a lot better than I do in terms of the

20 transcript -- it's not that long of a transcript, and

21 it's only -- you know, how often does a defendant

22 testify in trial, really. I rarely see that. But he

23 did, and he only has like maybe 40, 50, I don't know

24 how many pages, not that many pages. So I think that

25 the two of you need to sit down -- well, first of all,

1  you need to figure out which you think are irrelevant.

2  And it could very well be narrowed down to just very

3  few pages or very few lines.  And that's why I'm going

4  to give you guys enough time to do this.

5       Now as far as your -- so I know that -- I'm

6  not trying to make you do her job, I think she says,

7  look, this is what I want, and if I were the

8  prosecutor, I'd say the same thing.

9       MR. RAZZANO:  Okay.  I'll go ahead and look at

10  it, judge, and submit something obviously.

11       THE COURT:  Now on the issue of John Gorman,

12  who's here right now, he just walked in as I thought

13  about him, of him being the expert, you don't have --

14  you know, she doesn't have standing to object, but I

15  don't see what would be the problem for him to testify

16  about the Sentencing Guidelines, I really don't.

17       MS. JOHNSON:  No problem at all.

18       THE COURT:  Can you think of anything

19  administratively?

20       MS. JOHNSON:  I can't think of -- given the

21  lack of depth to which we're going to go in this,

22  frankly anybody could testify to the Guidelines that

23  sits and listens to it day after day.

24       THE COURT:  Well, I don't know about that, it

25  takes a little while to understand, believe me.  I

1   think it's like organic chemistry, and I took organic

2   chemistry, by the way, I hated every moment of it, but

3   I'm telling you, it's sort of like you have to really

4   sit down and think about it.  And so if Mr. Gorman,

5   he's the Federal Public Defender --

6        Mr. Gorman, do you think there's going to be a

7   problem with you speaking about the issues of

8   sentencing guidelines in general?

9        MR. GORMAN:  No.  I mean, the only possible

10  issue, but I don't think it will come up, is that I

11  have a conflict with --

12       THE COURT:  Oh, right, this is a fine point.

13       MR. GORMAN:  Just put that on the record,

14  yeah, but this is an issue unrelated to guilt or

15  innocence, this is basically expert testimony.

16       THE COURT:  Right.  But I suppose if there's a

17  way whereby the defendant and there's no objection by

18  the United States Attorney for the issue of conflict

19  because he did represent a co-defendant unrelated to

20  this case, then I don't have a problem with Mr. Gorman

21  being the defense's expert.

22       Is that who you want, Mr. Razzano?

23       MR. RAZZANO:  Yes, we would like Mr. Gorman.

24       THE COURT:  Okay.  Ms. Johnson, no problem,

25  right?

1          MS. JOHNSON:  Fine with me.

2          THE COURT:  Okay, so you're going to be the

3    expert.

4          MR. GORMAN:  Only one problem is the, in terms

5    of timing of the trial, I'll be gone from the 16th

6    trough the 20th of July.

7          THE COURT:  Oh, no, my dear, we're going to

8    finish this trial this week.

9          MR. GORMAN:  Oh, this week, okay.

10         THE COURT:  Yeah.  We're going to probably

11   start, if Mr. Razzano and Ms. Johnson can speed up the

12   issue of the trial transcript, then we could even go as

13   early as Wednesday.  But if not, because we have

14   another trial right before that, but we're going to

15   finish this, this week, and clearly next week.

16         MS. JOHNSON:  I'm gone next Monday.

17         THE COURT:  Oh.

18         MS. JOHNSON:  I'm in Oregon for a week next

19   Monday.

20         THE COURT:  Oh, I didn't know that.

21         MS. JOHNSON:  That's why the sentencings have

22   been moved around.  My Duh Wah Kim is moved back today.

23   I'm flying out Monday.

24         THE COURT:  Okay.  So we're going to have to

25   actually do this, let's try to speed this up, and

1  because -- how long will this trial take of this

2  defendant, Mr. Elm, Ms. Johnson, how long will your

3  case in chief take, honestly?

4          MS. JOHNSON:  Maybe half a day.

5          THE COURT:  Oh, see, that's not long.

6          MS. JOHNSON:  In essence it's Mr. Bowman

7  putting in the circumstances, putting his testimony in

8  context, reading the testimony.

9          THE COURT:  That's it.

10         MS. JOHNSON:  And the documents, and then the

11 sentencing.

12         THE COURT:  That's fast.  So if we can start

13 as early as Wednesday morning, that will be good, then

14 we can assure that the jurors are starting to be out to

15 deliberate by Friday, and even if you're gone, you

16 know, and the jurors are still deliberating, we can get

17 always get ahold of you, Ms. Johnson, via cell phone,

18 if there are any questions.

19         MS. JOHNSON:  (Nodding.)

20         THE COURT:  Okay.  So I would, it's my

21 preference honestly to finish these trials -- I

22 personally want to be in trial and I want to finish

23 them, but I'd have to bump all of my sentencings for

24 the rest of this week because last year -- last week

25 was grueling to have 16 sentencings in a row, plus

1    other motions, and I don't want to do that my staff

2    anymore, and to myself. And I don't want to have to do

3    sentencings and trial and waste jurors' time here in

4    court. So, Leilani and the staff have already bumped

5    everything except Duh Won Kim because that's important

6    that we take care of that this afternoon.

7            So the court will grant your motion to have

8    Mr. Gorman as your expert witness. And you'll want to

9    make sure that the defendant waives any potential

10   conflict; we'll have that placed on the record. And

11   then, let's see, I'll give you both an opportunity to

12   work, you know, quickly on this transcript issue. And

13   then what we can do is, because Ms. Johnson will be in

14   court, she can indicate whether or not you guys are

15   close to coming to a decision on this, and if there's

16   anything that is objected to, then I can -- then we can

17   discuss that either tomorrow afternoon if this trial --

18   when the other trial is done or first thing Wednesday

19   morning. How's that?

20           MR. RAZZANO: That's fine, Your Honor.

21           THE COURT: Any problems? Okay.

22           So let's see, so the defendant's -- well,

23   anyway, on the -- we're going to allow Ms. Cruz to

24   testify. She will be allowed to testify. And you

25   could qualify her as an expert, Ms. Johnson, I mean,

1  I think she really is an expert.  This stuff really is

2  expert kind of material.

3        MS. JOHNSON:  Well, actually her testimony is

4  going to be primarily focused on the effects of an

5  acceptance of responsibility on the defendant's

6  sentencing.

7        THE COURT:  Okay.  But she has to kind of

8  explain how she comes to that formula, right?

9        Anything further then?

10        MR. RAZZANO:  No, Your Honor.  Just to clarify

11  the ruling, it's motion granted as to the expert, John

12  Gorman is going to testify for us.

13        THE COURT:  Right.

14        MR. RAZZANO:  We're going to waive conflict of

15  interest, if any, on the record.

16        THE COURT:  Right.

17        MR. RAZZANO:  Ms. Cruz is limited in the

18  limited capacity as an expert, and not as to any

19  statements made during pretrial or presentence report?

20        THE COURT:  Right, and that's for purposes of

21  the case in chief.  If there's something that comes up

22  later that's relevant, then Ms. Johnson can renew her

23  request to have Ms. Maria Cruz testify and give us a

24  proffer of proof.

25        MR. RAZZANO:  And as to the motion that she

1    raised, you've granted the motion as to redacting pages

2    45 through 48, and then we're going to go back and look

3    at the remainder of the transcript?

4         THE COURT: Well, not the entire, I mean, just

5    that particular portion about the lie. I don't know

6    about all those other issues about the Rev and Tax

7    stuff. I think I'm going to leave that to you because

8    she's now indicated she wants the whole transcript, so

9    if that needs to be sent out as well, redacted because

10    it's irrelevant or it's, you know, the probative value

11    is substantially outweighed by the danger of unfair

12    prejudice or confusion of issues, et cetera, then the

13    court will do that. But hopefully the two of you can

14    come together with this and we can get right into the

15    trial. So that motion is really in limbo, because I

16    want you to look at the transcript.

17         MR. RAZZANO: Thank you, Your Honor.

18         THE COURT: Okay. So, keep me posted,

19    Ms. Johnson, or Mr. Razzano can call Leilani, and see

20    if you guys want to try to meet tomorrow afternoon,

21    because we should be done with that other trial.

22         Anything further?

23         MR. RAZZANO: No.

24         MS. JOHNSON: No, thank you.

25         THE COURT: Thank you, Ms. Johnson, and the

1    defendant, Mr. Elm.

2                THE DEFENDANT:  Thank you, Your Honor.

3                (Proceedings concluded.)

4                        *  *  *

5

6

7                    CERTIFICATE OF REPORTER

8

9    CITY OF AGANA          )
                            ) ss.
10   TERRITORY OF GUAM      )

11

12                I, Wanda M. Miles, Official Court Reporter

13   of the District Court of Guam, do hereby certify the

14   foregoing pages 1-62, inclusive, to be a true and

15   correct transcript of the shorthand notes taken by me

16   of the within-entitled proceedings, at the date and

17   time therein set forth.

18                Dated this 6th day of July, 2007.

19

20

21                _____

22

23

24

25