BElm.RRP

LEONARDO M. RAPADAS
United States Attorney
KARON V. JOHNSON
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Agana, Guam 96910
Telephone: (671) 472-7332/7283
Telecopier: (671) 472-7334

Attorneys for United States of America

**FILED**
DISTRICT COURT OF GUAM
JUL 16 2007
MARY L.M. MORAN
CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT
# FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>BRIAN WILLIAM ELM,<br><br>　　　　Defendants. | CRIMINAL CASE NO. 07-00026<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REDACT PARTS OF TRIAL TRANSCRIPT** |

Defendant has moved to eliminate virtually all defendant's testimony given in his prior trial, and in particular any testimony relating to the money laundering counts for which the jury acquitted him. Defendant, however, cites no authority in support of this proposition. The law is exactly to the contrary.

"In a perjury case, the government must prove that the statement made by the defendant in the prior tribunal and alleged to be false was material. In order to do that, the prosecution must offer evidence from the prior trial to show that the defendant's statements were material; simply offering the allegedly false statement itself is not enough." United States v. Leon-Reyes, 177 F.3d 816 (9th Cir. 1999). The court goes on to indicate that "previously, we have allowed

-1-

Case 1:07-cr-00026   Document 41   Filed 07/16/2007   Page 1 of 6

the prosecution to prove materiality of a statement by introducing the complete transcript of the prior proceeding, ..." Id. at 820. This case specifically concerned the use of summaries of the prior trial, instead of the entire transcript, a procedure of which the court approved.

Whether defendant was convicted or acquitted of the money laundering counts is irrelevant to whether testimony concerning them is admissible here, because he was convicted of conspiracy to distribute drugs, and the present perjury focuses on whether he lied at trial concerning his involvement in drug trafficking. Had defendant been charged with perjury arising out of his testimony about money laundering, collateral estoppel would control whether the government could try him at all, but it would not control the evidence it could use. *See* United States v. Dipp, 581 F.2d 323 (9th Cir. 1978). The collateral estoppel concept is directed to issues which may have been decided by the jury, not evidence used in the prior trial. United States v. Richard, 892 F.2d 761 (9th Cir. 1989).

The government has proposed that a redacted indictment be submitted to the jury, so that it would know nothing about the money laundering charges. The question concerning defendant's testimony, then, is whether it is relevant to prove materiality and/or intentional falsehood. Federal Rules of Evidence 401, 402 and 403.

The relevance of each sentence in defendant's trial transcript cannot be evaluated in a vacuum. Rather, it is necessarily weighed in the context of the entire proceeding, in particular defendant's motion for acceptance of responsibility. The thrust of his argument to the sentencing court was that he only pled not guilty and went to trial because he had not dealt more than 50 grams of ice, but had he known the jury was going to convict him of 5-50 grams, he would have pled guilty. In other words, his trial testimony was only ambiguous and not deliberately untruthful: while it appears to be a flat denial of any drug dealing, in fact is only a denial of distributing more than 50 grams. Had anyone asked whether he distributed less than 50, he would have cheerfully admitted it.

It is impossible to assess whether defendant was deliberately untruthful without the full

-2-

transcript of his testimony. The government's case, of course, is that his testimony was not ambiguous: he said he was not dealing at all. Presumably the defense will be that every statement he made was framed in the context that he was dealing, but not more than 50 grams. It appears the defense will be that his testimony was not untrue, because he was only talking about more than 50 grams. Given that materiality and intent are the central issues in this case, the government believes that only the following testimony could be redacted:

1) Page 14, lines 10-25;

2) Page 15, lines 1-14;

3) Page 20, lines 5-25 through page 32, lines 1-5. This entire line of testimony correlated telephone calls to the times bank deposits were made. The relevance of this was never clear, and still isn't.

4) As agreed in the prior hearing, page 44-45.

The rest of defendant's testimony is relevant and should not be excluded. For example:

A. Defendant's Use of Ice.

It is common knowledge that users sell drugs to support their habit. Thus, whether a person is using ice is some indicia of whether he is dealing. Defendant's confederates testified at trial that he used ice with them. Defendant denied he was using ice (p. 35-36) and called his Superior Court probation officer to testify that his urinalysis tests were negative. This testimony is evidence that his answers were not ambiguous, that his intent was to testify that he was not dealing at all.

B. Defendant's Finances

Ice trafficking is also highly profitable. Defendant's job, his wages, and his expenses, as for motorcycles and cell phones, are relevant. Jonathan Canovas testified that he had been shipping ice to Guam with a confederate, Albert Mendiola. Canovas returned to Guam during the summer of 2004, and was at a barbeque at Eric Aponik's house when defendant approached him about shipping ice to the defendant directly. Canovas was interested, and testified that after

-3-

he returned to Las Vegas, defendant contacted him and they agreed to start importing it. Canovas sent the first batch to Guam in early October, approximately two grams concealed in a greeting card. Defendant had never had a cell phone until October, 2004. He netted barely $5,000 in 2004 as a part-time lifeguard, yet he spent almost $900 in cell phone calls in a five-month period after acquiring the phone. This is evidence that Canovas was correct, and defendant acquired his phone for the purposes of dealing, not just chatting with people on Guam.

C. Cell Phone Records

Defendant wants to redact Page 56, where he admits getting a cell phone in October, though he had never had one before. When asked what the pressing reason was for getting a cell phone at that time, he said "no reason," not "I wanted to have Canovas sent me between 5-50 grams of ice."

Defendant acknowledged receiving many phone calls from Jonathan Canovas in Las Vegas. He wants to redact pages 57-58, where he acknowledged that Canovas would have no reason to call him, yet he flatly denied ever asking Canovas to send him ice for distribution. Not just more than 50 grams, but any ice.

Defendant insisted at page 12 that he and Canovas never talked about drugs. The government's exhibits demonstrating the pattern of calls between defendant and Canovas will be relevant to show they were discussing drugs, for which defendant was convicted. Defendant's testimony starting at page 56 makes clear that he means, they never talked about any drugs, either less than 50 grams or over 50 grams.

Eric Aponik testified that defendant told him of this scheme sometime in October, after he saw defendant make a cash deposit at the Bank of Guam. The first such deposit was made October 13, 2004. Aponik said defendant caused him to open his own post office box November 18, 2004, so that Canovas could send the ice directly to Aponik. The first money Canovs received from defendant was the October 13 deposit, the next on October 25 (this deposit was not one of the money laundering counts). Aponik testified that defendant would borrow his

-4-

phone to call Canovas, because defendant did not have long-distance service on his own. Canovas corroborated this. Defendant said Canovas would call him to just chat, but he denied ever calling Canovas in Las Vegas, for any reason (p. 60).

D. Pages 52-53

Defendant wants to redact Pages 52-53. Jarrett Elm, defendant's cousin, had testified that he saw the defendant and his brother-in-law, Eric Aponik, sitting at a table with a digital scale and a package of ice in front of them. Defendant flatly denied that had ever happened, not that it might be true because he was dealing between 5-50 grams.

E. Page 54

Jarrett Elm had testified that defendant and Aponik had shared ice with him; indeed, they introduced him to it. Defendant flatly denied this was so, rather than admitting it might be true, because he was dealing between 5-50 grams.

F. Pages 63 et seq.

Defendant wants to redact all defendant's testimony about John Cruz. Cruz testified that he began distributing ice for defendant in late 2004. Defendant acknowledged knowing Cruz, but denied Cruz' testimony that he was buying ice from defendant on an almost daily basis (p. 61). Defendant was scheduled to be incarcerated for a Superior Court probation violation beginning March 18, 2005. Aponik testified that a few days before, defendant arranged for Cruz to deal directly with Aponik. Defendant denied putting them together for the purpose of dealing any drugs, and said he could not understand why they were saying such awful things about him.

In summary, the Ninth Circuit has held the government must prove materiality through the testimony presented in the prior trial. The peculiar facts of this case, that defendant requested an acceptance of responsibility credit at sentencing by admitting he was trafficking in

\\
\\
\\

Case 1:07-cr-00026    Document 41    Filed 07/16/2007    Page 5 of 6

less than 50 grams, guarantees that virtually every word of his testimony must be admitted at this trial.

Respectfully submitted this 16th day of July, 2007.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: *[signature]*
KARON V. JOHNSON
Assistant U.S. Attorney

-6-

Case 1:07-cr-00026  Document 41  Filed 07/16/2007  Page 6 of 6